## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**WILLIAM CHRISTOPHER JACKSON**                                    **PETITIONER**

**VS.**                                    **CIVIL ACTION NO.: 2:13CV308-HTW-LRA**

**CHRISTOPHER EPPS, Superintendent,**
**Mississippi Department of Corrections**                                    **RESPONDENT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

William Christopher Jackson has filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody.  For the reasons more fully set out below, the Court finds that the Petition should be dismissed.

### FACTS AND PROCEDURAL BACKGROUND

Jackson was arrested on drug charges in Clarke County on February 1, 2008.  A Clarke County grand jury indicted him on February 25, 2009, and, on October 28, 2009, he entered a plea of guilty, while maintaining his innocence, under the authority of *North Carolina v. Alford*, 400 U.S. 25, 37 (1970).  The court deferred sentencing until December 8, 2009.  Jackson failed to appear on that date; however, he was ultimately arrested in Louisiana and extradited to Mississippi.  After the circuit court denied his motions to withdraw his guilty plea and dismiss his counsel, on June 24, 2010, the circuit judge sentenced Jackson to thirty years' imprisonment, with fifteen years suspended, followed by five years of post-release supervision.

Jackson timely filed a petition for post-conviction relief in state court, which was denied on March 19, 2013.  *Jackson v. State*, 122 So. 3d 1220 (Miss. Ct App. 2013).  Jackson's petition for rehearing was also denied, as was his petition for writ of certiorari to the Mississippi Supreme Court.

His petition in this Court seeks relief from his conviction and sentence on grounds that his counsel was ineffective.

Jackson was stopped by officers from the Clarke County Sheriff's Department and the South Mississippi Drug Task Force at a roadblock in Clarke County on February 1, 2008.  He did not have his driver's license, nor could he tell the officers its number or his Social Security number.  Jackson said that the car that he was driving was rented by his girlfriend, and he gave officers permission to search it.  When they found a Tide box in the back of the vehicle, Jackson tried, unsuccessfully, to run away.  The box contained 11,996 methamphetamine pills.

Jackson was arrested at the scene, and he remained in jail for four days.  After his release on bond, he hired Thomas Brame to represent him.  Jackson was not indicted until February 25, 2009, and that indictment was subsequently amended to include enhancement under Miss. Code Ann. § 41-29-147 (1972).  On May 4, 2009, Jackson entered a waiver of arraignment and plea of not guilty. At that time, under the indictment as enhanced, Jackson could have been sentenced to a term of ten to sixty years' imprisonment and fined up to two million dollars.  Ultimately, he entered into a plea agreement with the State to be sentenced to thirty years to serve, with twenty years suspended and five years of post-release supervision.  At the plea hearing, the circuit judge informed Jackson that the agreement permitted him to remain out of jail pending his sentencing hearing, so long as he appeared on time at the sentencing hearing and had not been arrested on any new felonies.  If those conditions were not met, then the court would treat his plea as a blind plea, under which the court could sentence him up to sixty years in prison.

As part of the sentencing proceeding, Jackson was questioned extensively regarding his understanding of the plea process.  He expressed satisfaction with his attorney's performance, and

he testified that no one had pressured, tricked, or manipulated him into pleading guilty.  The prosecutor summarized the evidence that would have been presented against him at trial, and Jackson said that he was freely, voluntarily, and knowledgeably pleading guilty, even in light of forfeiting certain constitutional protections.  The Petition to Enter Plea of Guilty is part of the state court record filed in this matter, and it includes the following statements:

> I told my lawyer all the facts and circumstances known to me about the charge(s) against me.  I believe that my lawyer is fully informed on all such matters.  My lawyer has counseled and advised me on the nature of each charge; on any and all lesser included charges; and on all possible defenses that I might have in this case.

> I believe that my lawyer has done all that anyone could do to counsel and assist me, and I am satisfied with the advice and help he has given me.  After consulting with my lawyer, I am entering my plea of "GUILTY" freely and voluntarily and of my own accord and with full understanding of all matters set forth in the indictment and in this petition and in the certificate of my lawyer which follows. [Jackson's initials appear here.]

> 5.  I understand that I may plead "NOT GUILTY" to any offense charged against me.  If I choose to plead "NOT GUILTY" the Constitution guarantees me:

> (a)  the right to a speedy and public trial by jury;

> (b)  the right to see, hear and face in open court all witnesses called to testify against me, and the right to cross-examine those witnesses.

> (c)  the right to use the power and process of the court to compel the production of any evidence, including the attendance of any witnesses in my favor;

> (d)  the right to have the assistance of a lawyer at all stages of the proceedings;

> (e)  the presumption of innocence, i.e. the State must prove beyond a reasonable doubt that I am guilty;

> (f)  the right to take the witness stand at my sole option; and, if I do not take the witness stand, I understand the jury may be told that this shall not be held against me;

3

(g)     the right to appeal my case to the Mississippi Supreme Court if I am
convicted at a trial on the charge(s) in the indictment.

Knowing and understanding the Constitutional guarantees set forth in this
paragraph, I hereby waive them and renew my desire to enter a plea of "GUILTY".
(Jackson's initials appear here.)

ECF No. 18-3, pp. 88-90.

Jackson did not appear for the sentencing hearing on December 8, 2009, and a bench warrant
was issued for his arrest.  He was arrested in Louisiana in April, 2010, and his sentencing hearing
was re-set for June 24, 2010.  The day before his sentencing hearing, Jackson and his attorney filed
a joint motion to allow his counsel to withdraw.  Jackson also filed a motion to withdraw his guilty
plea.  The circuit judge did not address the motion to withdraw the guilty plea, and he sentenced
Jackson to thirty years, with fifteen to serve and fifteen suspended, and five years' post-release
supervision.  After imposing the sentence, the judge granted the motion to withdraw.  While he was
awaiting transport to a facility operated by MDOC, Jackson escaped from the Clarke County Jail.
He was arrested in Michigan about six weeks later and extradited back to Clarke County, where he
was indicted for and convicted of escape.  Jackson is currently an inmate at the Walnut Grove
Correctional Facility.

## <u>ANALYSIS</u>

### 1.     Petitioner's Claims and State Court Opinion.

Jackson alleges that his attorney was constitutionally ineffective for failing to gather
sufficient evidence to subject the prosecution's case to meaningful adversarial testing, for failing to
request a speedy trial or move the court to dismiss the indictment for failure to grant a speedy trial,
and for failing to move to suppress evidence obtained in violation of his Fourth Amendment rights.
These issues were raised in state court by way of Jackson's petition for post-conviction relief.  With

regard to the failure to conduct adequate pretrial investigation, the court held that Jackson had not shown deficient performance, as required under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As the Supreme Court stated in *Strickland*, "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691. Thus, the state court concluded, the decision to pursue a plea bargain made the decision to forego an investigation reasonable. 122 So. 3d at 1228. In any event, the court ruled, Jackson did not show prejudice, as he did not show with specificity how further investigation would have changed the outcome of his case. *Id.* Absent a showing of prejudice, the court denied relief on this claim.

The court also addressed Jackson's claim that his counsel should have asserted his right to a speedy trial. This claim, the court held, was waived by Jackson's decision to plead guilty. *Id*. at 1227. Even if that result was not dictated by precedent, the plea petition specifically stated that Jackson understood that he was giving up this constitutional protection. As to Jackson's claim that the pre-indictment delay should have been raised, the court noted that Miss. Code Ann. § 99-1-5 (1972 & Supp. 2013) permits a two-year delay in indicting for this offense. Since the State indicted Jackson within a year and twenty-five days of his offense, this issue lacked merit. *Id*. Finally, like the speedy trial claim, the court dismissed Jackson's Fourth Amendment claim related to the traffic stop on grounds that it was waived by Jackson's guilty plea. *Id*. at 1228.

## 2.    Standard of Review

In response to years of complaints about the delay in reviewing habeas petitions, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub. L. 104-132, 110 Stat. 1244 (codified at 28 U.S.C. 2254 (2006)); *Baze v. Rees*, 553 U.S. 35, 69 (2008) (Alito, J.,

concurring) (stating that the AEDPA "was designed to address this problem."). The standard of review is codified at 28 U.S.C. § 2254, which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1)  In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254.  Under this statute, where the state court adjudicates the petitioner's claim on the merits, this court reviews questions of fact under § 2254(d)(2), while questions of law or mixed questions of law and fact are reviewed under § 2254(d)(1).  Factual findings are presumed to be correct, and the reviewing court defers to the state court's decision regarding factual determinations. *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).   The court independently reviews questions of law and mixed questions of law and fact to determine whether the state court's decision thereon was either "contrary to" or an "unreasonable application of" federal law.  *Williams v. Taylor*, 529 U.S. 362, 407-12 (2000).

In 2000, the Supreme Court, in a plurality opinion, addressed the meaning of AEDPA's standard of review.  *Williams*, 529 U.S. 362.  Justice O'Conner authored the portion of the opinion that explained the appropriate standard of review under AEDPA, and she limited "federal law" for

6

purposes of AEDPA analysis, to the holdings of the Supreme Court of the United States. *Williams*, 529 U.S. at 378. *Clearly established* federal law is that which exists at the time of the last state court decision on the merits of the claim. *Id*. at 412; *Greene v. Fisher*, 132 S. Ct. 38, 45 (2011). A state court's adjudication of a claim is *contrary to* clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases or if it decides a case differently than [the Supreme Court has] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's application of legal precedent to the particular facts of a petitioner's case will be an *unreasonable application* of the law if it identifies the correct federal law but unreasonably applies it to the facts, unreasonably extends the correct legal principle to a new context where it should not apply, or unreasonably refuses to extend the principle to a new context where it should apply. *Williams*, 529 U.S. at 406. The term "unreasonable," was distinguished in *Williams* from "erroneous" or "incorrect;" thus, a state court's incorrect application of the law may be permitted to stand if it is, nonetheless, "reasonable." *Id*.

Recent decisions have reaffirmed the Court's adherence to this interpretation of AEDPA, noting that the appropriate standard of review is much more rigorous in a habeas case than on direct review. *Renico v. Lett*, 559 U.S. 766, 772-73 (2010). As the Court more recently explained, "If this standard is difficult to meet, that is because it was meant to be. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Richter*, 131 S. Ct. at 786. Due to the intrusive effect of the writ of habeas corpus on state court decisions, the Court reasoned:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

7

*Id*. at 786-87.

The Court also limited the scope of habeas review of the facts in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011).  There, the Court held that habeas review conducted under § 2254(d)(1) (the applicable section where the state court has reviewed a claim on the merits) must be limited to the record that was considered in state court.  *Id*. at 1398-1400.  The basis for the ruling was "Congress' intent to channel prisoners' claims first to the state court."  *Id*. at 1398-99.  A district court may still conduct hearings, under §2254(e)(2), where a petitioner has failed to develop the factual basis of his claim in state court, but the circumstances under which such a claim may be raised are severely limited.  *Pinholster*, 131 S. Ct. at 1400-01.

The Supreme Court's interpretation of  federal habeas law compels this Court to undertake a rigorous examination of habeas claims, with an eye to protecting the state court's judgment from federal interference.  That review must be based solely on the record before the state court and must give the state court's decision the benefit of the doubt there could be no fairminded doubt of error. This is the standard with which this Court has reviewed Jackson's claims in this case, and, based on this standard, and for the reasons that follow, this Court finds that he is not entitled to habeas relief.

### 3.    Counsel was not ineffective in pretrial preparation.

In support of his argument on this issue, Jackson makes the following representations.  He states that his then-fiancee, Jerica Schaffer, rented the vehicle in which the drugs were found from a rental company at the airport in Baton Rouge, Louisiana.  Jackson was not present.  Schaffer rented the car so that she could drive her friend, Kawana Cummings, to her home in Detroit, Michigan.  Before they could leave, however, Schaffer was called in to work, so Jackson agreed to drive Cummings home.

According to Jackson, when Schaffer went to the rental company to rent a vehicle, there were none available; however, a car arrived while she was still at the rental counter.  Schaffer asked the agent whether she could rent that car, and the agent said that she could have it, so long as she was willing to clean it out herself.  Schaffer agreed and rented the car, which, according to Jackson, contained the Tide box in which the drugs were found, as well as "trash and other items."  It was on the return trip from Detroit that Jackson was arrested.

Jackson claims that his attorney was ineffective in failing to contact either Schaffer or Cummings, or to locate and interview the rental car company clerk, prior to trial.  Jackson also argues that his attorney should have subpoenaed the records of the rental car company and investigated the criminal background of the prior renters.  Had counsel conducted this investigation, Jackson believes that the State would not have been able to prove that he was in possession of the drugs in question.  Because of the lack of preparation, Jackson contends that he was left "in a precarious position and susceptible to counsel's insistence that he plead guilty on the day of trial, even though he wanted to go to trial."

In its opinion on this issue, the state court recognized the *Strickland* standard, requiring a showing of deficient performance and prejudice, and held, "Considering Jackson's attorney's strategy to pursue a plea bargain, his decision not to investigate was reasonable given the deference we afford to a counsel's judgment."  122 So. 3d at 1228.  Even if the failure to investigate constituted deficient performance, the court held, Jackson had not established what further investigation would have revealed.  "While Jackson states that his girlfriend, her friend, and the rental clerk would have all corroborated his story, he fails to explain how such information would have changed the outcome."  *Id*.

The law is well-settled that a defendant is entitled to the effective assistance of counsel in deciding whether to plead guilty. *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010). Although the substance of a speedy trial claim might be waived by the entry of a knowing and voluntary guilty plea, the entry of a plea does not supercede errors by defense counsel. *Missouri v. Frye*, 132 S. Ct. 1399, 1406 (2012). There must, however, be error. In a decision rejecting the claim that an allegedly coerced confession vitiated a guilty plea, the Supreme Court held that a defendant pleading guilty "is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." *McMann v. Richardson*, 397 U.S. 759, 774 (1970). As later explained, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267(1973).

Thus, a defendant who pleads guilty "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.*; *see also Conerly v. State*, 607 So. 2d 1153, 1156 (Miss. 1992). This is true even if the plea was made under the auspices of *North Carolina v. Alford*, 400 U.S. 25, 32 (1970). *Taylor v. Whitley*, 933 F.2d 325, 327 (5th Cir. 1991). Only if attorney error stems from the actual plea bargaining process, rather than events preceding it, may it form the basis of a viable claim. *Id. See also United States v. Broce*, 488 U.S. 563, 572 (1989); *Trahan v. Estelle*, 544 F.2d 1305, 1309 (5th Cir. 1977). Jackson's claim of ineffectiveness is based on his contention that his attorney should have conducted more pretrial investigation prior to his plea. He has not alleged any deficiency or error with regard to the plea bargaining process itself. Jackson has not cited, nor has this Court found, a case in which a claim of error prior to the inception of the plea-bargaining process has been addressed after a guilty

plea has been entered.  Instead, post-*Tollett* cases have permitted ineffectiveness claims after a guilty plea only when they are related to conduct that affected the plea-bargaining process.

In *Hill v. Lockhart*, for example, the Court quoted *Tollett* and explained that, after entering a guilty plea, a defendant can only attack its voluntary and intelligent character by showing that the advice he received from counsel was constitutionally deficient.  474 U.S. 52, 57 (1985).  The *Strickland* test for ineffectiveness – deficient performance and prejudice – is a restatement of the test used in *Tollett*, and the Court used that test to determine whether an ineffectiveness claim could be based on a guilty plea entered after erroneous advice from counsel about parole status.  The Court concluded that it could not, holding, "Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial."  474 U.S. at 60.

In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the Court extended the Sixth Amendment's right to effective counsel to counsel's advice on the effects of a guilty plea on immigration status.  Negotiation of a plea bargain, the Court held, is a critical phase of litigation requiring effective assistance of counsel.  *Id*. at 373.  For that reason, deportation, though arguably a collateral effect of a guilty plea, is a result serious enough to require counsel to investigate the issue.  As the Court concluded, "informed consideration of possible deportation can only benefit both the State and noncitizen defendants during the plea-bargaining process."  *Id*.

Subsequently, the Court reviewed a habeas case brought by a petitioner charged with assault with intent to murder after shooting his victim in her buttock, hip, and abdomen.  *Lafler v. Cooper*, 132 S. Ct. 1376 (2012).  His trial counsel advised him to reject a plea offer, telling him that the prosecution could not establish intent to murder because the wounds were all below the waist.  *Id*.

11

at 1383.  The petitioner followed his lawyer's advice, but was convicted on all counts, resulting in a sentence over three times longer than the plea bargain would have provided.  The State having admitted that counsel's advice was constitutionally deficient, the Supreme Court granted relief, holding, "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."  *Id*. at 1387.

In a companion case, the Court considered whether an ineffectiveness claim could be brought after a guilty plea was entered where the petitioner complained that he had not known about earlier, more favorable plea offers.  *Missouri v. Frye*, 132 S. Ct. 1399 (2012).  Although defense counsel's error occurred prior to the bargaining process that resulted in the actual guilty plea, the Supreme Court held that the petitioner could bring a claim based on his attorney's failure to communicate the earlier offers to him.  In so doing, the Court compared that situation with claims of inadequate advice, which can be resolved by a formal court appearance where the trial court and counsel "have the opportunity to establish on the record that the defendant understands the process that led to any offer, the advantages and disadvantages of accepting it, and the sentencing consequences or possibilities that will ensue once a conviction is entered based upon the plea."  132 S. Ct. at 1406. In contrast, the existence of a previous offer may not be reflected in the record, nor would it necessarily be discussed at the plea hearing.  Thus, an attorney's failure to communicate such an offer to his client can constitute inadequate representation that is not remedied during the plea process.  *Id*. at 1406.

More recently, the Court considered a case in which the petitioner's first lawyer negotiated a favorable plea agreement to a charge of first-degree murder, in which she would plead guilty to manslaughter and receive a seven to fifteen year sentence.  *Burt v. Titlow*, 134 S. Ct. 10 (2013).  Her

second lawyer, however, believing that the term was higher than the normal sentence for a charge of manslaughter, advised that she demand even more favorable terms.  When the prosecutor refused, the petitioner withdrew her guilty plea, was convicted, and was sentenced to twenty to forty years' imprisonment.  The petitioner claimed that counsel was ineffective in advising her to plead guilty without taking the time to learn the strength of the prosecution's case.  *Id*. at *14.  The Supreme Court disagreed, recognizing the barrier to federal relief for a claim adjudicated in state court, and holding, "With respondent having knowingly entered the guilty plea, we think any confusion about the strength of the State's evidence upon withdrawing the plea less than a month later highly unlikely."  *Id*.

Consideration of these cases leads to the inescapable conclusion that, where a petitioner has pleaded guilty, there can be no habeas relief based on a claim that counsel was deficient in his pretrial activities that were not part of the plea bargaining process.  According to Jackson's Memorandum, he told his attorney at their first meeting that the car in which the drugs were found was rented by Jerica Schaffer in order to drive Kawana Cummings home to Detroit.  He also told counsel that the car was not cleaned out prior to Schaffer's renting it and that the Tide box was already in the vehicle.  Even if counsel had followed up with these witnesses, they allegedly would have merely corroborated the story that Jackson had already told his attorney.  Jackson does not claim that these witnesses would have been available to testify at his trial, and, in fact, he has specifically complained (in his speedy trial argument) that they were unavailable.

This claim relates to actions that Jackson believes his attorney should have taken prior to the plea bargain process.  It has nothing to do with the parameters of the agreement that was struck between Jackson and the State.  During the plea colloquy, in fact, Jackson confirmed under oath that

he and his attorney had discussed the facts of his case, as well as any possible legal defenses he had

to the charge.  He also told the court that he was satisfied with his attorney's services and that he

thought his counsel had "done all that any attorney should do in representing you and defending you

in your case," despite the fact that he had allegedly related to counsel the full story regarding the

rental car, and he knew that counsel had not talked to his witnesses.   The Petition to enter the guilty

plea went even further, stating that he believed that his lawyer "is fully informed" on all of the facts

of his case and that he was, nonetheless, "satisfied with the advice and help he has given me."  For

these reasons, Jackson waived this claim when he pleaded guilty.

Even if this Court could consider this ineffectiveness claim, the scrutiny of an attorney's

performance under § 2254(d) is "doubly deferential."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403

(2011).  Jackson would have to, therefore, "demonstrate that it was necessarily unreasonable for the

[state court] to conclude: (1) that he had not overcome the strong presumption of competence; and

(2) that he had failed to undermine confidence in the [guilty plea]."  *Id.*  In other words, Jackson

must show, not only that he has satisfied the *Strickland* test, but that there was no reasonable basis

for the state court's opinion to the contrary, in light of clearly established federal law.   In the

context of habeas review, this Court "must determine what arguments or theories . . . could have

supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists

could disagree that those arguments or theories are inconsistent with the holding in a prior decision

of [the Supreme] Court."  *Richter*, 131 S. Ct. at 786.

Here, the state court was not unreasonable in concluding that the pretrial investigation that

Jackson contends should have taken place would not have changed the outcome of his case.  Counsel

had already heard the story of how the drugs came to be in the car Jackson was driving, and he

apparently elected not to pursue witnesses who would testify to that effect.  Those witnesses may

or may not have been available to testify, and Jackson knew they had not been interviewed.  He has

not identified a decision of the United States Supreme Court that fairminded jurists would find

inconsistent with the state court's disposition of this claim, and he is not entitled to habeas relief on

this issue.

**4.     Jackson does not have an ineffectiveness claim based on failure to seek a speedy trial.**

Jackson was arrested at the traffic stop where his car was searched on February 1, 2008.  He

was indicted on drug charges on February 25, 2009.  His trial date was set for October 28, 2009;

however, on that date, Jackson pleaded guilty under *Alford*.  For the purpose of speedy trial analysis,

the relevant time period is the time between his arrest and his guilty plea, which was about twenty

months.

A review of the record in this case shows that Jackson raised the speedy trial issue in his

brief to the Court of Appeals, specifically citing the controlling case, *Barker v. Wingo*, 407 U.S. 514

(1972), and making a lengthy argument.  In state court, he attacked the voluntariness of his waiver

of his speedy trial right, and he also argued that his attorney was ineffective for failing to raise it.

In his habeas petition, Jackson only argues the ineffectiveness claim.  The Mississippi Court of

Appeals addressed both aspects of Jackson's claim in its opinion denying relief.  With regard to the

ineffectiveness claim, the court stated:

> The Mississippi Supreme Court has held that a voluntary guilty plea waives
> the right to a speedy trial.  *Anderson v. State*, 577 So. 2d 390, 391-92 (Miss. 1991).
> As we have already found that Jackson voluntarily pled guilty, Jackson waived his
> right to a speedy trial.  Further, Jackson swore in his plea petition that he knew and
> understood that by pleading guilty, he waived his right to a speedy trial.
>
> Additionally, Jackson argues that his counsel failed to investigate the State's
> delay in presenting the charge to the grand jury.  Mississippi Code Annotated section

99-1-5 (Supp. 2012) provides that for certain crimes, a person shall not be prosecuted unless the prosecution is commenced within two years after the commission of the crime. The State had two years in which to indict Jackson, and the State did so within one year and twenty-five days of his arrest. Therefore, these issues are without merit.

122 So. 3d 1220, 1227 (Miss. Ct. App. 2013).

In a pre-AEDPA case, *Nelson v. Hargett*, 989 F.2d 847, 849 (5th Cir. 1993), cited by Jackson in his brief, the court considered a claim that trial counsel was ineffective in failing to assert a speedy trial claim, even though the petitioner had pleaded guilty. In that case, however, there was attorney error during the negotiation process. Prior to his retention of counsel, the petitioner had submitted two motions for a speedy trial, *pro se*. Although he advised his lawyer of that fact, the lawyer was unable to find the motions in the court records, and he advised the petitioner that he would not prevail on a speedy trial claim without that evidence. The lawyer also told his client that he would likely get a ninety-year sentence if he went to trial. 989 F.2d at 849-50. Based on these representations, the petitioner pleaded guilty. Later, his sister found an order denying one of the petitioner's *pro se* motions in the court file. Based on the attorney's error, the court permitted the petitioner to pursue his ineffectiveness claim. Clearly, this case is inapposite of Jackson's, where there was no mistake or bad advice relative to the plea bargain, but only a claim that his counsel should have made an earlier motion to dismiss his case.

*Nelson* would not be controlling, in any event. It is not Fifth Circuit precedent, but cases from the United States Supreme Court, that form the basis of "clearly established federal law" for purposes of an AEDPA analysis. *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) ("The Court of Appeals' . . . conclusion rested in part on the mistaken belief that circuit precedent may be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that

this Court has not yet announced."); *Lopez v. Smith*, No. 13-946, 2014 WL 4956764 at *3 (U.S. Oct. 6, 2014); *Nevada v. Jackson*, 133 S. Ct. 1990, 1993-94 (2013). The Mississippi Court of Appeals' opinion that Jackson had waived his speedy trial right claim by pleading guilty is consonant with clearly established federal law.  For that reason, this claim lacks merit.

Even if this Court were to reach the merits of the ineffectiveness claim, Jackson would not be entitled to relief.  As the state court ruled that the speedy trial claim had been waived, there is no mention of *Barker* or its four-part test for speedy trial determinations. Nonetheless, Jackson must still overcome the requirements of §2254(d) to prevail on his claim.  The Supreme Court has construed the presumption of correctness to apply to a state court's decision even when there is no explanation for the decision, where the opinion does not cite the controlling federal law, when the state court is not aware of the controlling federal law, and where the decision does not indicate which parts of a multi-part claim it found insufficient.  *Richter*, 131 S. Ct. at 784.

Jackson alleges that his counsel was ineffective for failing to press a speedy trial claim.  If that underlying claim has no merit, then the ineffectiveness claim must likewise fail.  *Laws v. Stephens*, 536 F. App'x 409, 411-12 (5th Cir. 2013).  Under *Barker*, the court must balance the following factors in evaluating a speedy trial claim: the length of the delay between arrest and trial; the reasons for the delay; the defendant's assertion of his speedy trial rights; and the prejudice to the defendant resulting from the delay.  *Barker*, 407 U.S. at 530.  For purposes of this review, the Court must consider whether these factors so favored Jackson that his counsel's failure to raise them constituted deficient performance that changed the outcome of his case.

Jackson admits that he was only held in pretrial detention for four days immediately following his arrest.  After he was released on bond, Jackson retained Brame to represent him.  He

appeared in court twice, the second time on August 25, 2008.  No action was taken on his case, and, according to Jackson, Brame told him that he was not being indicted and congratulated him.  The indictment was returned in February, 2009, and Jackson claims that he learned of it in April.  Jackson called Brame and, Jackson says, an argument ensued, during which the following occurred:

> Arguing that it had been over a year since his arrest and six months since he was told that he was not being indicted, Jackson implored counsel to do something about it, because the timing of the indictment and the amount of time it was taking to adjudicate his case was having an extremely burdensome toll on his family's life.  To this Mr. Brame's response was that there was nothing he could do because the State had up to two years to indict Jackson – but never once mentioning the Constitutional violation of his right to a speedy trial due to the already exorbitant delay since his arrest.

There is no mechanical formula for the *Barker* s analysis, nor is any one factor dispositive.  *Amos v. Thornton*, 646 F.3d 199, 205 (5th Cir. 2011);  *Nelson*, 989 F.2d at 851.  Instead, the four factors are analyzed by reference to the peculiar facts of the case, and they are each weighed and balanced to decide whether a constitutional violation has occurred.  *Amos*, 646 F.3d at 205.  Although the *Barker* test is clearly established, it is a discretionary rule.  *Davis v. Kelly*, 316 F.3d 125, 128 (2d Cir. 2003).  Deference is particularly accorded to the state court in such a matter, because balancing the *Barker* factors "'is more judicial art than science.'"  *Rashad v. Walsh*, 300 F.3d 27, 45 (1st Cir. 2002) (quoting *Look v. Amaral*, 725 F.2d 4, 8 (1st Cir. 1984)).  In assessing Jackson's claim, which was rejected by the state court without an explanation, this Court  must "determine 'what arguments or theories . . . could have supported the state court's decision' and then ask whether fairminded jurists could conclude that those arguments and theories are consistent with the Supreme Court's relevant teachings."  *Id*. (quoting *Richter*, 131 S. Ct. at 784).  Jackson's failure to show that the opinion of the Mississippi Supreme Court was an unreasonable application of, or contrary to, clearly established federal law is fatal to his position.

As to the first factor in a *Barker* analysis, a delay of over a year is generally held to be presumptively prejudicial, thereby triggering analysis of the remaining factors. *Nelson*, 989 F.2d at 851-52. The delay "must persist for at least eighteen months over and above that bare minimum for this factor to strongly favor the accused." *Amos*, 646 F.3d at 206-07. Here, the delay between the initial arrest and Jackson's appearance to plead guilty was approximately twenty months. The Fifth Circuit has held that a twenty-three month delay weighed, at most, only slightly in favor of the defendant. *Laws v. Stephens*, 536 F. App'x at 412.

The second factor requires a determination of which party was more responsible for the delay. Here, there is no indication from the state court record provided to this Court as to the reasons for the delay in indicting Jackson, which constituted over twelve months. There is, likewise, little evidence regarding the approximate eight-month delay between Jackson's indictment and plea. What can be determined about the pretrial proceedings in Jackson's case follows:

Feb. 1, 2008   Arrested

Feb. 5, 2008   Arrest warrant served; Jackson released

Feb. 25, 2008  Initial appearance; bond set

Apr. 1, 2008   Evidence sent to Crime Lab

Apr. 25, 2008  Report from Crime Lab

Jan. 29, 2009  NCIC Inquiry

Feb. 25, 2009  Indictment

Mar. 2, 2009   Arrest warrant

Mar. 4, 2009   Affidavit of custodian of Louisiana prior arrest records

Apr. 8, 2009   Letter from TSA to Jackson advising him of arrest warrant

Apr. 24, 2009   Letter from Louisiana D. A. advising Clarke County of dropped charges

May 4, 2009    Jackson enters waiver of arraignment and plea of not guilty

Sept. 4, 2009   Letter from attorney to Jackson, enclosing discovery

Oct. 9, 2009    Indictment amended to include enhancement

Oct. 28, 2009   Petition to Enter Plea of Guilty

While this timeline does nothing to explain the delay between the arrest and the indictment, there is, at least, some indication that, post-indictment, the parties were engaged in acquiring evidence. Jackson has presented no evidence that would show that the State was intentionally delaying his case to obtain some undue advantage. *See Doggett v. United States*, 505 U.S. 647, 656 (1992).  If the delay is attributable to simple negligence, the factor weighs less heavily against the state.  *Barker*, 407 U.S. at 531.  If this Court were permitted to conduct a *de novo* review of Jackson's speedy trial claim, it could hold, at most, that this factor weighs slightly in Jackson's favor.

The third factor is whether the defendant adequately asserted his right to a speedy trial. There is no evidence in the record that a formal assertion of that right was ever made.  That is the basis of Jackson's ineffectiveness claim.  The only suggestion, however, that Jackson asked his attorney to speed up the process comes from the conversation that Jackson had with his lawyer in April, 2009, after discovering that he had been indicted.  If the Court accepts this argument as evidence that Jackson did invoke his right to a speedy trial, that invocation occurred only six months prior to the entry of his guilty plea.  The undersigned finds that this factor is neutral, not favorable to Jackson.

The final element in the *Barker* analysis is whether the defendant was prejudiced by the delay.  Since the first two factors weigh only slightly in his favor, Jackson must make an affirmative

showing of actual prejudice to succeed on his speedy trial claim. *Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir. 1994). Prejudice may be established in three ways: (1) proof of oppressive pretrial incarceration; (2) proof of anxiety and concern of the accused; and (3) proof that the defense was impaired by the delay. *Barker*, 407 U.S. at 533. Jackson admits that his four-day incarceration was not oppressive. As to Jackson's anxiety and concern, the Supreme Court "has suggested that living 'under a cloud of suspicion and anxiety' for four years constitutes only 'minimal' prejudice absent an effect on a defendant's trial." *Laws*, 536 F. App'x at 414 (quoting *Barker*, 407 U.S. at 534.) Jackson argues that he lost two essential witnesses, Ms. Schaffer and Ms. Cummings, because of the delay. Jackson's Memorandum in support of his Petition, indicates, however, that his fiancee "separated from Jackson approximately two months prior to his trial date." Ms Schaffer, with whom Jackson apparently had children, "became involved in another relationship and subsequently became very difficult to locate or communicate with." Ms. Cummings apparently became difficult to find at about the same time.

Jackson's argument on this issue is simply not persuasive. He knew, at least by receiving his attorney's letter of September 4, 2009, that his trial had been set for October 28. Assuming that Jackson and Schaffer, whom he referred to as his "common-law wife of five years" and the mother of his children, had separated around the end of August, it does not seem credible that she could have completely disappeared within a matter of days. Moreover, it does not appear that Jackson made any effort to preserve her testimony for trial prior to her disappearance. *Robinson v. Whitley*, 2 F.3d 562, 571 (5th Cir. 1993). For all of these reasons, even if this Court could consider Jackson's speedy trial claim, he has not made the requisite showing to entitle him to relief.

In sum, given the deference that this Court must give to the state court's determination on this issue, Jackson has failed to make the requisite showing for habeas relief. His guilty plea specifically waived any speedy trial rights that he may have had. Even though he has alleged ineffectiveness, his claim relates to pre-plea issues, not any default in conducting the plea bargaining process itself. Finally, Jackson has not shown that the state court's determination that his counsel was not ineffective is contrary to, or an unreasonable application of, clearly established federal law. For all of these reasons, Jackson is not entitled to habeas relief on this issue.

**5.      Jackson's counsel was not ineffective for failing to pursue a motion to suppress.**

Jackson argues that he was stopped at an illegal checkpoint, that his consent to search the car was coerced, and that the search of the car exceeded the consent. Thus, he argues, his arrest as the result of finding drugs during the illegal search was, itself, illegal. He maintains that his attorney should have pursued this line of defense before advising Jackson to plead guilty. The state court made short work of this argument, holding, "Jackson waived the alleged Fourth Amendment violations with his voluntary guilty plea. Therefore, this issue has no merit." 122 So. 3d at 1228.

The state court's determination on this issue must stand for the same reasons as the first two claims: it is based on Jackson's view of what his attorney should have done prior to the plea bargaining process. As explained earlier, when Jackson entered his guilty plea, he expressed satisfaction with his attorney's efforts. He cannot now be heard to complain that his attorney should have done more.

Even if he could, in order to succeed on this claim, Jackson would have to show that a motion to suppress was likely to succeed on the merits; otherwise, he could not succeed on the prejudice prong of the *Strickland* analysis. *Hill*, 474 U.S. at 59; *Morris v. Thaler*, 425 F. App'x 415,

419 (5th Cir. 2011).  Jackson argues that the checkpoint at which he was stopped violated the principles announced in *City of Indianapolis v. Edmonds*, 531 U.S. 32 (2000).  In that case, the Supreme Court held that a checkpoint program designed primarily to intercept illegal drugs was unconstitutional, as its purpose "was to detect evidence of ordinary criminal wrongdoing."  *Id*. at 41.

In order to advance his claim, Jackson has constructed a version of the checkpoint designed to place it within the ambit of *Edmond,* and he argues that the Case Agent's Report supports that claim.  That Report begins, "On February 1, 2008 the Clarke County Sheriff's Department and the South Mississippi Narcotics Task Force (S.M.N.T.F.) conducted a road side safety check at the intersection of I-59 and County Rd. 370.  William Christopher Jackson was arrested at this checkpoint and charged with trafficking a schedule II controlled substance (ecstasy)."  Jackson contends that the Court , because of the presence of the drug task force, should draw the inference that this was actually a narcotics checkpoint.  He also contends that signs along I-59 read, "Narcotics Checkpoint Up Ahead Be Prepared To Stop" demonstrate that this was an illegal drug checkpoint, as does the fact that this checkpoint was operated every year only for southbound traffic during Mardi Gras season in New Orleans.

There is no question that a safety checkpoint is constitutionally valid.  *Edmond*, 531 U.S. at 39; *Delaware v. Prouse*, 440 U.S. 648, 663 (1979).  A "ruse" checkpoint with signs indicating that a narcotics stop is just ahead on the highway is also permissible, so long as the only vehicles stopped are those that have committed a traffic violation, regardless of whether the officer's subjective intent was to intercept drug traffic.  *Webb v. Arbuckle*, 456 F. App'x 374, (5th Cir. 2011); *McLendon v. State*, 945 So. 2d 372, 380 (Miss. 2006) ("[T]he primary purpose determines whether a roadblock

23

is constitutional . . . ."). In this case, in the absence of evidence to the contrary, since officers characterized this checkpoint as a "road side safety check," it would pass constitutional muster, even if a secondary purpose was to catch drug traffickers. Thus, even if Jackson could attack his lawyer's failure to contest the legality of the stop at this point, it is highly unlikely that the challenge would be successful. Jackson is not entitled to habeas relief on this issue.

## CONCLUSION

Having reviewed each of Jackson's claims for habeas corpus relief under the deferential standard of review required by 28 U.S.C. §2254(d), it appears that none possesses sufficient merit to warrant issuance of the writ. The Court finds no part of the Mississippi Court of Appeals' opinion to be contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts in light of the evidence presented. For these reasons, it is the recommendation of the undersigned United States Magistrate Judge that this habeas petition should be dismissed with prejudice.


## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 6th day of February, 2015.


/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE